5ws205
f227   99

## Lewis *against* Carstairs.

It is a question of law for the court whether a party demanding and receiving from an adjoining lot-holder the payment of money towards laying down water-pipes in an alley, is estopped from denying a subsequent purchaser's right to the use of the alley. Whether the facts raise a presumption of a grant is a question of fact for the jury.

THIS case, which was trespass *quare clausum fregit,* and is reported in 6 *Whart.* 193, came before this court again upon a writ of error sued out by the defendants below to the District Court for the city and county of *Philadelphia,* where a verdict and judgment passed for the plaintiff. The title-deeds under which the defendants claimed the right to a watercourse along an alley, as well as the parol evidence given on the trial, are there set out at length.

The defendants requested the court to charge the jury:

1. That they may presume a grant of the right of way, watercourse, &c. by the plaintiffs to the several defendants, from the facts given in evidence in this case, although 20 years' uninterrupted use of the alley, before the obstruction, has not been proved.

2. That if the jury believe that the defendants, or those from whom they purchased, were called upon by the plaintiffs to contribute to the repairs of the pavement of the alley, and did so contribute, the plaintiffs are equitably estopped from contesting the right of the defendants to the use of the alley, as a passage, watercourse, &c.

3. That if the jury believe that the defendants or those from whom they purchased, were called upon by the plaintiffs to contribute to the expenses of putting in pipes of conduit for water under the surface of the pavement of the alley, and did so contribute, the plaintiffs are equitably estopped from contesting the right of the defendants to the use of the alley, as a passage, watercourse, &c.

4. That if the jury believe that the defendants, or those from whom they purchased, expended their money upon the alley, with the knowledge and assent of the plaintiffs, they are equitably estopped from contesting the right of the defendants to the use of the alley.

5. That if the jury believe that the plaintiffs were acquainted with the fact of the alley having been extended by George Murray, or some one afterwards using the three houses in Chestnut street, so as to serve as an outlet to those houses, and acquiesced

V. — S

[Lewis v. Carstairs.]

in the same for several years, and the defendants purchased at different times the said houses without notice from the plaintiffs of any intention to deny the right, the plaintiffs cannot now prevent the defendants from using the alley for any of the purposes for which it has been heretofore used.

The Judge, in his charge to the jury, after stating the facts, referred to the decision of this court in this cause, 6 *Whart.* 207, and said that, as to the George street property, the title to the right of way and watercourse had been conclusively settled in favour of the plaintiff, and that there was no evidence for the consideration of the jury on this branch of the case. He further remarked, that this court had also decided that, on the legal construction of the deeds and writings given in evidence, no right to the easement passed to the owners of the three houses on Chestnut street; but that, in regard to this Chesnut street property, questions remained for the determination of the jury, in relation to the presumption of a grant, and in reference to an equitable estoppel. He then read the five points presented by the defendants, and stated, that as he deemed them all to be fully comprehended and disposed of in the authoritative judgment of this court, he would repeat the language of the Chief Justice who delivered that judgment, and give it in charge to the jury, as containing the answers now made by the court to the said points.

The Judge then read the following portion of the opinion: " But though no right to the easement passed to the defendants by the conveyance of Burd or of Murray his grantee, it remains to be seen whether there was not presumptive evidence of some other grant, which might have been left to the jury; and whether the facts said to be proved by it, did not constitute an equitable estoppel in favour of an innocent purchaser, who may have parted with his money on the faith of them.

In the conveyance to Murray, the easement is described as an alley and " watercourse over and along the same." It is as obvious to the spectator that these alleys are used as much for drainage as for passage, as it is obvious to the lawyer, that the word, watercourse, was here used in a sense very different from its technical one. A watercourse, it is said in 3 *Bulstr.* 340, begins not by prescription, nor yet by assent, but *ex jure naturæ;* and that being a natural course, it may not be diverted. And we know that our interest in it will be protected, even when it sinks below the surface. But a watercourse over and along an alley is, by the words of its description, a superficial as well as an artificial one; and the ownership of it consequently gives no right to break up the soil for the purpose of laying pipes, which, being a subject of separate grant, might be acquired by adverse use, without at the same time acquiring a right of way. Now should it be found that the evidence had regard to expenditure for laying pipes, or for replacing the pavement, having laid them, it would go to prove a contribution

[Lewis v. Carstairs.]

to a general charge of a very different nature from that which would imply the existence of a joint right to the alley, as a passage and a drain.   On the other hand, if the expenditure was for the ordinary repairs of the alley, the payment of Mr Biddle's proportion of it could be looked upon in no other light than that of contribution to a common burden, founded in a common obligation and correlative right in the thing which was the subject of it; and as such a right could exist only on the basis of a grant, the admission of obligation implied from the act of contribution, would be an admission of a grant, the evidence of which would be proper for the jury, not as conclusive or even necessarily *primâ facie*, but as operating just so far as it should produce conviction of the fact. As a ground of equitable estoppel, however, it might be conclusive, if, to the appearance of adverse enjoyment, occasioned by the plaintiff's supineness, were added positive acts of acquiescence on his part, which may have encouraged an innocent purchaser to pay his money on the faith of them.   This estoppel has its root in a plain and familiar principle of equity, which casts a loss from a voluntary, though innocent act, on the author of it.   Now, though the evidence did not show very clearly the specific object to which Mr Biddle's contribution had been applied, there was still something to be left to the jury."

The Judge then adverted to Mr Biddle's testimony, on which the defendants had relied.   He said the plaintiff contended that the expenditure to which Mr Biddle contributed, was merely for laying pipes, or the consequent replacing of the pavement, which expenditure was distinguished from an expenditure for the ordinary repairs of the alley.   That, on the other hand, the defendants contended that the expenditure to which Mr Biddle contributed, in reality was for the ordinary repairs; and the Judge stated that the jury were to determine for themselves which view of the evidence they would adopt.   If they adopted the plaintiff's view, then the contribution was " of a very different nature from that which would imply the existence of a joint right to the alley as a passage and a drain."   But that if the jury adopted the defendants' view of the evidence, then in the language of the Chief Justice, " the payment of Mr Biddle's proportion of the expenditure, could be looked upon in no other light than that of contribution to a common burden, founded in a common obligation and correlative right in the thing which was the subject of it; and as such a right could exist only on the basis of a grant, the admission of obligation implied from the act of contribution, would be an admission of a grant, the evidence of which would be proper for the jury, not as conclusive, or even necessarily *primâ facie*, but as operating just so far as it should produce conviction of the fact."

Upon the subject of an equitable estoppel, the Judge said, that if the jury adopted the defendants' view of the evidence, namely, that the expenditure to which Mr Biddle contributed was an ex-

[Lewis v. Carstairs.]

penditure for the *ordinary repairs* of the alley, then " as a ground of equitable estoppel, the payment of Mr Biddle's proportion of such expenditure *might* be conclusive, if, to the appearance of adverse enjoyment, occasioned by the plaintiff's supineness, were added positive acts of acquiescence on his part, which may have encouraged an innocent purchaser to pay his money on the faith of *them*."

The Judge stated that the jury were to decide upon the effect of the testimony. If they agreed with the plaintiffs on this point, there is no ground according to the decision of the Supreme Court, upon which the jury could find an equitable estoppel. If, however, the jury embrace the defendants' view of the evidence, then the instruction of the Supreme Court is, that the jury may consider whether the fact of a contribution by Mr Biddle to an expenditure for *general repairs* of the alley, taken in connection with the other circumstances referred to by the Chief Justice, afforded the *conclusive* ground of equitable estoppel suggested by the learned Judge; a ground for the decision by the jury, that the plaintiff is equitably estopped from denying the defendants' right of way and right of watercourse. The jury are to be satisfied of the fact that the expenditure was for *ordinary repairs*, and then they are to determine whether the fact, in connection with the other circumstances, creates an estoppel. The question of equitable estoppel is submitted to the jury. (This, the Judge said, he understood to be the direction of the Supreme Court). The defendant then asked the Judge to charge the jury distinctly upon the points presented to him; to which he replied : " My answer to these points has already been given in the language of the Supreme Court, which I believe fully meets them all, and which I will read again." (The Judge here read the opinion of the Supreme Court in *Lewis* v. *Carstairs*, beginning with the words " In the conveyance to Murray," &c).

The defendant, after the delivery of the charge, excepted, 1. To so much thereof as related to the points presented to the court, viz., that the Judge did not answer the same specifically or in detail, or in any other way than by reading the opinion of the Supreme Court in the case of *Lewis* v. *Carstairs*. 2. To the Judge's leaving it to the jury to determine the whole question of *estoppel ;* instead of charging them that if they believed the fact to be in a certain way, then the law was that the plaintiff was equitably estopped.

Errors assigned :

1. The Judge refused to charge as requested in the defendants' points.

2. The Judge left it to the jury as a matter of fact for them, whether the plaintiffs were equitably estopped from contesting the right of the defendants to the alley.

3. The Judge refused to answer the points presented to him

specifically and in detail, and in any other way than by reading the opinion of the Supreme Court in the case of *Lewis* v. *Carstairs.*

*T. I. Wharton,* for the plaintiffs in error, contended that under the circumstances of the case, there being purchasers, there was an equitable estoppel of the plaintiff: having acquiesced in the use of the alley and charged and received payment for the laying down of the pipes and repairs, he cannot now allege the party had no title.   1 *Story's Eq.* 376–8; 4 *Serg. & Rawle* 241; 14 *Serg. & Rawle* 267; 8 *Serg. & Rawle* 92.   That being the case, the court erred in leaving it to the jury to decide whether or not there was this estoppel.   This was a question of law, not of fact, and was for the court to decide. 6 *Binn.* 416; 3 *Serg. & Rawle* 490; 1 *Rawle* 373; 4 *Whart.* 150; 1 *Watts* 507; 2 *Whart.* 503; 3 *Whart.* 143; 8 *Serg. & Rawle* 92.

*Gerhard,* contra, insisted there was no ground for inferring an equitable estoppel, which is only for the interposition of a court of equity and not of law.   Besides, there was no proof here of a purchaser for value, nor of payment of money, or that the purchasers were deceived: nor of any laches on the part of the plaintiff.   The court below properly left it to the jury under the opinion of this court given on an examination of all the merits of the case.

Per Curiam.—Whether an estoppel results from established facts, is a question for the determination of the court; and the Judge seems not to have gone far enough in submitting the question of equitable estoppel, so to call it, to the jury.   The presumptive evidence of right by grant, from the contribution to the laying of pipes within twenty years, being entitled to no artificial force from length of time, was properly left to the jury on its natural tendency to produce conviction; and had the contest been between the original parties to the supposed grant, all would have been well.   But there is a purchaser in the case; and evidence of positive, but deceptive acts of acquiescence on the other side, which may have misled him, it is said, as to the true state of the right, is of a different stamp.   As it can never appear whether a purchaser has been actually prejudiced by such acts, the possibility of injury to him is enough to raise an equitable estoppel by operation of law.   His opponent is estopped from denying the right on whose existence he gave the purchaser reason to confide.   Perhaps sufficient care was not taken in the opinion delivered by this court to distinguish between the natural presumption of a grant, which is clearly for the jury; and deceptive acts of encouragement to a purchaser, which are as clearly for the court.   Viewed as evidence of a grant between the former parties, the effect of taking contribution from Mr Biddle for laying pipes, was mat-

v. — 27                    s *

[Lewis v. Carstairs.]

ter of fact : viewed as an act which may have encouraged the de-
·fendant to believe in the existence of such a grant, it was matter
of law.

Judgment reversed, and a *venire de novo* awarded.