# Converse *v.* Paret, Appellant.

*Corporations—Stockholders—Double liability.*

Under the laws of Minnesota which impose a liability upon stockholders of certain classes of corporations to creditors to an amount equal to the par value of their stock, the liability is fixed upon the persons whose names stand on the stock register of the company as the owners of the stock; and if an executor permits stock to be registered in his own name without indicating in any way on the register of the company that he holds the stock as executor, he will be liable individually for assessments levied by the receiver of the company when it becomes insolvent.

Argued March 9, 1910. Appeal, No. 407, Jan. T., 1909, by defendant, from judgment of C. P. Monroe Co., Sept. T., 1907, No. 23, for plaintiff non obstante veredicto in case of Theodore R. Converse, Receiver of the Minnesota Thresher Manufacturing Company, v. Carrie G. Clark Paret. Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit to recover assessments on stock. Before STAPLES, P. J.

The facts appear by the opinion of the Supreme Court.

The constitution of the state of Minnesota, adopted October 13, 1857, sec. 3, art. X, provides as follows:

"Each stockholder in any corporation (except those organized for the purpose of carrying on any kind of manufacturing or mechanical business) shall be liable to the amount of stock held or owned by him."

And the laws of that state, inter alia, further provide as follows:

"Statutes 1849-1858 (280). Sec. XIII. No person holding stock in such corporation as executor, administrator, guardian or trustee, and no person holding stock as collateral security, shall be personally subject to any liability as stockholder of such corporation, but the person pledging such stock shall be considered as holding the same, and shall be liable as a stockholder accordingly, and the estates and funds in the hands of such executor, administrator, guardian or trustee, shall be liable in like manner as the testate or intestate would have been if he had been living, or the ward or person interested in such trust fund would have been, if he had been competent to act, and held the same stock in his own name.

"Statutes 1891. Sec. 3133. Same—Not personally liable—Persons holding stock in a corporation as executors, administrators, guardians or trustees shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate,

ward or person interested in the trust fund would be, if they were respectively living and competent to act, and held the stock in their own names.

"Statutes 1894.   3418. Executors, etc., may vote as stockholders—An executor, administrator, guardian or trustee shall represent the shares or stock in his hands at all meetings of the corporation, and may vote as a stockholder.

"3419. Executors, etc., not to be personally liable— Persons holding stock in a corporation as executors, administrators, guardians or trustees shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward or person interested in the trust fund would be, if they were respectively living and competent to act, and held the stock in their own names.

"Revised Laws, 1905.   2881. Executors, etc., may vote—Not personally liable—Every executor, administrator, guardian, or trustee shall represent the shares of stock in his hands, for all purposes, at all meetings of the corporation, but while acting in good faith shall not be personally liable; but the estates and funds in his hands shall be liable in like manner and to the same extent as the beneficiary or other represented party or interest would be if competent to act and holding the stock in their own names, respectively."

At the trial the jury returned a verdict in favor of the defendant.   Subsequently, the facts being undisputed, the court entered judgment for plaintiff for $2,000 non obstante veredicto.

*Error assigned* was in entering judgment for plaintiff non obstante veredicto.

*F. B. Holmes*, for appellant.—The statute recognizes the justice of making a discrimination between those who hold stock in their own right, and those who hold it

merely in a representative capacity, or as trustees or by way of collateral security: Burgess v. Seligman, 107 U. S. 20; May v. Genesee County Savings Bank, 120 Mich. 330 (79 N. W. Repr. 630); Colonial Trust Co. v. McMillan, 188 Mo. 547 (87 S. W. Repr. 933); Cook v. Carpenter, 212 Pa. 177.

*Wilton A. Erdman,* with him *George H. Butler,* for appellee.—Defendant by accepting certificates of stock made out to her in her own name, and by permitting the stock to stand on the books of the Thresher company, is estopped to deny her ownership of such stock as against the creditors of the corporation: Dunn v. State Bank of Minneapolis, 59 Minn. 221 (61 N. W. Repr. 27); Harper v. Carroll, 66 Minn. 487 (69 N. W. Repr. 610–1069); State v. Bank of New England, 70 Minn. 398 (73 N. W. Repr. 153); Marshall, Field & Co. v. Evans, Johnson, Sloan & Co., 118 N. W. Repr. (Minn.) 55.

The Minnesota statute exempting executors and others who hold stock in a fiduciary capacity from personal liability as stockholders does not extend to the case where an executor holds stock in his own name: Markell v. Ray, 75 Minn. 138 (77 N. W. Repr. 788); Adams v. Clark, 85 Pac. Repr. (Colo.) 642; Davis v. First Baptist Society, 44 Conn. 582; Sherwood v. Illinois Trust & Savings Bank, 195 Ill. 112 (62 N. E. Repr. 835).

OPINION BY MR. JUSTICE STEWART, May 2, 1910:

James B. Clark, a citizen of the state of Connecticut, died in August, 1894. By his last will he appointed his wife, the defendant in this action, executrix, and gave her the full use and control of his entire estate until his only son should arrive at the age of twenty-one years, at which period the will directed that whatever estate then remained should be divided equally between widow and son. At the time of his death Clark was the owner of forty shares of the capital stock of the Northwestern Manufacturing & Car Company, a corporation organ-

ized under the laws of the state of Minnesota. In 1884, the Thresher Manufacturing Company, also a Minnesota corporation, acquired the assets of the Manufacturing and Car company and substituted its own stock for that of the former. The defendant, as executrix of the will of Clark, surrendered the certificates of stock that were in her husband's name, and received in exchange certificates for forty shares in the Thresher company in her own name, Carrie G. Clark. She had given no directions as to the transfer, but the stock so issued to her was carried on the stock ledger and also upon the stub of the certificate book as the stock of Carrie G. Clark. The promoters of the new company organized a voting trust, and in December, 1887, the defendant delivered to the trustees the certificates that had been issued to her in her own name, signing at the same time an agreement in which she averred that she individually was the owner of the stock, and receiving in exchange a trustees' receipt which recited that the stock was held by them for Carrie G. Clark. Upon surrender of the trustees' certificate in 1894, a certificate for forty shares of the capital stock in her then name, Carrie G. Clark Paret, was issued and receipted for by her. Once in 1886, and again in 1897, defendant voted by proxy the stock standing in her name. In 1901, at the suit of a creditor the Minnesota Thresher Company was adjudged insolvent, and the plaintiff in this action was appointed receiver. Under the laws of Minnesota stockholders in corporations such as this are held liable to the amount of their stock at its par value. The courts directed two assessments on the capital stock of the company, one in 1902, of thirty-six per cent, and one in 1907, of sixty-four per cent. At these dates the defendant's home was in Monroe county in this state. Action was there brought against her for the recovery of these assessments. The defense set up was that the defendant was not the beneficial owner of the stock, but that the same belonged to the estate of her deceased husband; that the stock had not been issued in her name

at her direction; that she continued to hold it in her name because unadvised that such fact indicated individual ownership on her part; that she had no knowledge of how it was registered on the books of the corporation; that she never asserted ownership over it; that as executrix of her husband's will she had fully accounted for it,—subsequent, however, to the insolvency of the corporation—and had transferred it to her son who was a legatee under the will. On the trial of the case defendant testified very fully in support of these averments contained in the affidavit of defense, and nothing was offered by way of contradiction. It was submitted to the jury to determine the question of ownership of the stock; and it was further submitted to them—unnecessarily, since there were no facts in dispute—to determine whether defendant was estopped from claiming that she was not the owner of the stock by reason of anything she had done or failed to do in connection with the certificate which had been issued to her. Whether an estoppel results from established facts, is a question for the determination of the court: Lewis v. Carstairs, 5 W. & S. 205. On both issues the finding was for the defendant. A motion for judgment non obstante followed. The court, in a lengthy opinion filed, sustained the motion and directed judgment to be entered for the plaintiff, on the ground that under the statutes of Minnesota as construed by the highest judicial tribunal of that state, "the liability of a person to assessment on stock in an insolvent corporation, is fixed by the names in which the stock stands on the stock register of the corporation when it ceases to be a going concern, irrespective of who is the real or absolute owner thereof, subject, of course, to the knowledge of the person sought to be charged of how the certificates are actually issued, or to acts which make the person a party to its appearing on the stock register." It is conceded that as a general statement of the law of Minnesota governing the liability of stockholders of insolvent corporations this is correct; but the applicability

of the general rule to cases such as that under present consideration is denied. Section XIII of the general statutes of Minnesota, 1849–1858, reads as follows: "No person holding stock in such corporation as executor, administrator, guardian or trustee, and no person holding stock as collateral security, shall be personally subject to any liability as a stockholder of such corporation, but the person pledging such stock shall be considered as holding the same, and shall be liable as a stockholder accordingly, and the estates and funds in the hands of such executor, administrator, guardian or trustee, shall be liable in like manner as the testate or intestate would have been if he had been living, or the ward or person interested in such trust funds would have been if he had been competent to act and held the same stock in his own name." In repeated decisions the Supreme Court of the state has held that the exemption from liability allowed by this statute, when the stock is held as collateral security, extends only to cases where the fact of such collateral holding appears on the stock register. Of the cases cited by the learned trial judge we need only refer to Dunn v. State Bank, 59 Minn. 221; Harper v. Carroll, 66 Minn. 487; Marshall, Field & Co. v. Evans, 118 N. W. Repr. 55. That no case has been found where an executor has been held liable individually for an assessment on stock belonging to an estate in his hands, but which was registered in his own name, is without significance; it means nothing more than that no case involving such fact has yet arisen. The conclusion is irresistible that the construction placed on the statute, with respect to the rights of those holding stock as collateral security, must necessarily be the same with respect to the rights of one holding as executor, guardian or trustee. It is impossible to find any distinction between them in the statute, and no reason can be suggested why they should be distinguished. The learned trial judge was entirely correct in accepting it as the settled law of Minnesota, upon the authorities cited, that the exemption al-

lowed by the statute can be claimed only when the registry of the stock discloses that it is held by the party to whom the certificate had been issued, not as owner, but as pledgee or trustee. A like statute with this, in the state of Missouri, has received similar judicial construction there, a fact unimportant except that the construction placed on the statute by the Missouri court met with disapproval and dissent in the supreme court of the United States. The reference is to the case of Burgess v. Seligman, 107 U. S. 20. There the circuit court had sustained the right of a party registered as the holder of stock to show that in point of fact it was held as collateral security. On appeal the United States supreme court affirmed the circuit court, notwithstanding the supreme court of Missouri had meanwhile decided in several cases that the registry as it stood was conclusive against the party, the supreme court of the United States asserting its right to disregard these decisions and its unwillingness to be bound by them. The basis of this affirmance was that when the circuit court rendered its decision in the case, the question raised had not then been adjudicated by the Missouri supreme court, and the former court having adopted its own interpretation of the law applicable to the case, as it had a right to do, such interpretation was not to be disturbed because of the fact that a different interpretation had been adopted by the state court after the right had accrued to the circuit court. True, the case holds, that a construction of the statute which would give the holder of the stock the right of exemption from liability, when it is shown that notwithstanding the registry of it in his own name he holds it as collateral, is supported by the better reason, and refers approvingly to decisions in Maryland and New York where similar statutes have been so construed; but the court makes it very clear that its decision, though contrary to that of the Missouri supreme court, is not an attempt to overrule or set aside the latter except as a controlling authority in the particular case then under

consideration. The opinion proceeds, "Since the ordinary administration of the law is carried on by the state courts it necessarily happens that by the course of their decisions certain rules are established which become rules of property and action in the state, and have all the effect of law, and which it would be wrong to disturb. This is especially true with regard to the law of real estate and the construction of state constitutions and statutes. Such established rules are always regarded by the federal courts, no less than by the state courts themselves, as authoritative declarations of what the law is. But where the law has not been thus settled, it is the right and duty of the federal courts to exercise their own judgments; as they also always do in reference to the doctrine of commercial law and general jurisprudence. So when contracts and transactions have been entered into, and rights have accrued thereon under a particular state of the decisions, or when there has been no decision, of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued. But even in such cases, for the sake of harmony and to avoid confusion, the federal courts will lean towards an agreement of views with the state courts if the question seems to them balanced with doubt." As thus explained the case of Burgess v. Seligman, 107 U. S. 20, is not an authority governing in the present issue. It is enough to know that the Minnesota courts have repeatedly since the decision in Burgess v. Seligman (1882), reasserted their adherence to the construction they originally gave this state statute, notably in Harper v. Carroll, supra, decided in 1896. The suggestion that the Minnesota cases holding a pledgee liable where the registry discloses nothing inconsistent with his ownership of the stock, rest on the fact that when rendered there was no statute in existence exempting pledgees from liability, is simply an unsupported suggestion, and nothing more.

If the statute which we have above quoted was ever either wholly or in part repealed, so far as it relates to holders of stock as collateral, it was for the appellant to show the fact. In Marshall, Field & Co. v. Evans, 118 N. W. Repr. 55, decided in 1908, there is a clear recognition of the existence of the statute. It is there said "It is well settled that one for whom corporate stock has been transferred in pledge, or in trust, or as collateral security for money loaned, but who appears in the books of the corporation as the general owner thereof, is liable as a stockholder for the debts of the corporation." The language here used is significant not only with respect to the existence of the statute, but it connects trustees with pledgees in such a way as to leave no doubt that the construction given the statute applies equally to both.

Aside from these controlling considerations we see no equity in the defense here attempted on the facts as established. That question, however, need not be discussed. It is sufficient that under the laws of Minnesota the defendant is estopped from asserting ownership of the stock in anyone but herself. The judgment is affirmed.                                   .