In re TRAFFIC SAFETY COMPANY, INC., Bankrupt.

Leonard P. GOLDBERGER, Substitute Trustee, Plaintiff,

v.

Ralph HORAN Transamerica Insurance Co., Defendants.

Bankruptcy No. 78–507G.

United States Bankruptcy Court, E. D. Pennsylvania.

July 16, 1982.

Donald M. Harrison, Fellheimer, Krakower & Eichen, Philadelphia, Pa., and Craig S. Boyd, Boyertown, Pa., for plaintiff, Leonard P. Goldberger, substitute trustee.

John C. McNamara, German, Gallagher & Murtagh, Philadelphia, Pa., for defendant, Transamerica Ins. Co.

Ralph Horan, Willow Grove, Pa., former trustee.

Leonard P. Goldberger, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., substitute trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issues at bench are: (1) whether the surety on a bond of the former trustee of the bankrupt's estate is liable for damages caused by the actions of the former trustee in suppressing the bidding at a public sale of the bankrupt's assets and (2) where the surety admits its liability for funds misappropriated by the former trustee, whether the surety is also liable for the increased administrative costs (in the form of attorney's fees and lost interest) caused by the trustee's defalcation. We conclude that the surety is liable for the damages

caused by the former trustee's suppression of the bidding which damages amount to the difference between the amount which would have been realized and the amount which was actually received. And we further determine that the surety is liable for the increased administrative costs incurred by the estate in investigating the former trustee's defalcation and is liable for interest at the legal rate for all claims for which it is responsible.

The facts of the instant case are as follows:[1] On April 14, 1978, an involuntary petition in bankruptcy was filed against Traffic Safety Company, Inc. ("the bankrupt") and an order was entered on June 26, 1978, adjudicating it a bankrupt under the Bankruptcy Act ("the Act").[2] Ralph P. Horan ("Horan") was appointed receiver and was, subsequently, elected trustee of the bankrupt's estate. Thereafter, by the direction of the court, Horan obtained a fidelity bond in the amount of $60,000 from Transamerica Insurance Company ("Transamerica") which was approved by and filed with the court on September 24, 1979.

In late November, 1979, Horan received an offer from one Evan Evans ("Evans") in the amount of $12,600.00 for the purchase of certain assets from the bankrupt estate, including a forklift, a truck and some plastics. Pursuant to that offer, Horan filed an application with the court for authority to consummate that sale. On December 3, 1979, Evans gave Horan $12,600.00 on account of the proposed sale which money Horan thereafter used for his personal benefit. On December 27, 1979, a hearing was held to consider the proposed sale of the bankrupt's assets to Evans. At that time, we entered an order approving the sale and

Horan produced $1,260.00 which he stated was a deposit given by Evans. When no further payment was received by Evans within the 30 days required by our order of December 27, 1979, it was discovered that Evans had previously paid the entire purchase price which had been misappropriated by Horan.

On further investigation it was also discovered that, prior to the approval of the sale to Evans, Horan had been approached by one David Garber ("Garber") who had offered to purchase the plastics alone for the sum of $18,000.00. However, Garber was told by Horan that, if he did not bid on the plastics in court, Horan would guarantee that Garber would be able to buy the plastics from Evans for $6,000.00. As a result, Garber did not bid on the plastics at the hearing held on December 27, 1979. Garber was told afterwards, however, that he could not buy the plastic for less than $24,000.00.

On February 25, 1980, when the above facts came to light, Horan was removed as trustee and Leonard P. Goldberger, Esq., ("Goldberger") was appointed substitute trustee. Thereafter, Goldberger filed the instant complaint against Horan and Transamerica for $9,800.00 representing the moneys paid by Evans to the trustee and defalcated by the trustee from the proceeds of the sale to Evans. Goldberger also sought to recover damages caused by Horan's suppression of the bidding at the court sale, the administrative costs expended by the trustee in uncovering Horan's derelictions, and legal interest on all of the estate's claims against Horan and Transamerica.[3] Transamerica readily admitted its liability, as surety, for the $9,800.00 of estate funds

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. While the Bankruptcy Act has been superseded by the Bankruptcy Code as of October 1, 1979, the provisions of the Act still govern petitions filed before that date. The Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 403, 92 Stat. 2683 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

3. In his complaint, Goldberger sought $3,772.50 in administrative expenses, $5,400.00 in damages caused by the suppression in bidding as well as interest at a rate of 10–14% which was what he asserted the estate could have earned on the misappropriated funds by investing them.

Horan failed to file an answer to the above complaint whereupon, on May 1, 1980, we granted Goldberger's motion for a default judgment against Horan.

which were improperly retained by Horan but denied its liability on the other items. Transamerica also raised a procedural issue which we find necessary to address first.

■ Transamerica contends that the instant complaint is procedurally defective in that it is not brought in the name of the United States. It is true that § 50h of the Act provides that any person injured by the breach of a trustee's bond may proceed on that bond in the name of the United States.[4] But § 50n provides specifically that:

> n. In the event of the breach of any obligation of a bond furnished pursuant to this Act, the court may, *upon application of any party in interest and after notice, summarily determine the damages and by appropriate process enforce the collection thereof from those liable on the bond.*[5]

Transamerica does not dispute that there was a breach of its bond.[6] And the successor trustee is clearly a party in interest who may (and did) file an application to have the court determine the damages caused by that breach. Accordingly, we conclude that the successor trustee is a proper party to bring the instant complaint.

4. Section 50h provides:
   h. Bonds of receivers, trustees, and designated depositories shall be filed of record in the office of the clerk of the court and may be proceeded upon in the name of the United States for the use of any person injured by a breach of their conditions or may be enforced as provided in subdivision n of this section. 11 U.S.C. § 78h (repealed 1978).

5. *Id.* at § 78n. (Emphasis added)

6. The bond in question provides, in relevant part:
   NOW, THEREFORE, If the said Ralph P. Horan, Trustee as aforesaid, shall obey such orders as said Court may make in relation to said trust, and *shall faithfully and truly account for all the moneys, assets and effects of the estate of said Bankrupt which shall come into his hands and possession,* and shall in all respects faithfully perform all his official duties as said Trustee, then this obligation to be void; otherwise, to remain in full force and virtue.
   *See* Exhibit A, attached to the complaint herein filed March 19, 1980 (emphasis added.)

■ With respect to the issue of what liability, if any, Transamerica has under the bond, it is necessary to examine the language of the bond. The bond provides that the surety will be liable for any failure by Horan to "faithfully and truly account for all the moneys, assets and effects of the estate of said bankrupt which shall come into his hands and possession, and shall in all respects faithfully perform all his official duties as said trustee."[7] It is clear that the action of Horan in using the money which he received from the purchaser of the bankrupt's assets for his own personal use was a failure to faithfully account for all of the bankrupt's assets and, as such, was a breach of a condition of the bond thereby imposing liability on Transamerica.[8] And, as we have heretofore stated, Transamerica freely admits that breach and concedes that it is liable in the amount of $9,800.00 as a result of that breach.

■ It is the balance of the trustee's claim that Transamerica disputes. For example, with respect to the trustee's suppression of the bidding, we conclude that that was also a breach of the bond imposing further liability on Transamerica. The trustee's paramount duty is to conserve the assets of the estate and to advance the interests of the estate entrusted to him.[9]

Transamerica admits that the defalcation of the $9,800.00 by Horan was a breach of the terms of the bond.

7. *Id.*

8. A breach by the principal of any one of the conditions of the bond will impose liability on the surety. *See, e.g., Zoby v. United States,* 364 F.2d 216 (4th Cir. 1966); *In re Perelstine,* 44 F.2d 62 (W.D.Pa.1930), *aff'd sub nom., Royal Indemnity Co. v. Sproul,* 46 F.2d 1019 (3d Cir. 1931); *Plummer v. Wilson,* 322 Pa. 118, 185 A. 311 (1936); *Pittsburgh Constr. Co. v. West Side Belt Ry. Co.,* 227 Pa. 90, 75 A. 1029 (1910); *Pennsylvania Supply Co. v. Nat'l Cas. Co.,* 152 Pa.Super. 217, 31 A.2d 453 (Pa.Super. Ct.1943); *United States v. Cherry,* 115 Pa.Super. 471, 175 A. 891 (Pa.Super.Ct.1934).

9. *See generally,* 2A Collier on Bankruptcy ¶ 47.02 at 1743 (14th ed. 1978) and cases cited therein. *See also,* 11 U.S.C. § 75 (repealed 1978) which deals with the duties of the trustee under the Act.

The uncontradicted testimony by Garber, produced at the trial, was that Horan, while acting as trustee, caused Garber, a potential bidder on assets of the estate, to refrain from bidding. Clearly that action lessened the receipts of the estate and was not in the best interests of the estate since it resulted in less money accruing to the estate. Consequently, we conclude that Horan did not faithfully execute his official duties as trustee thereby breaching the bond and making Transamerica liable thereon.

■ Transamerica, however, disputes the fact that Horan suppressed the bidding for the estate's assets. However, to support that position, Transamerica seeks to cite certain testimony presented at the hearing to confirm the sale.[10] Because that testimony was not formally introduced into evidence at the trial of this complaint it is inadmissable and we conclude that we are precluded from considering it as evidence. As stated by the United States Court of Appeals for the Third Circuit in *In re Aughenbaugh*[11]:

> We may not consider other evidence which may have been in the files of the referee in the bankruptcy administration proceeding. To hold otherwise would be to violate the fundamental concept of procedural due process that a party to litigation is entitled to have the evidence relied on by his opponent presented at the hearing of his case so that he may have opportunity to cross-examine his opponent's witnesses and to offer evidence in rebuttal.[12]

■ It is the trustee's obligation of course, to sell the bankrupt's assets at the highest price obtainable. Hence, with respect to the amount of damages for which Transamerica is liable, we conclude first that, because of Horan's action in suppressing the bidding at the sale of the bankrupt's assets, the estate was injured at least to the extent of $5,400.00 which is the difference between the amount which Garber was willing to bid and the amount which was actually bid.

■ We conclude further that Transamerica is also liable for the administration costs incurred by the estate, as a direct result of Horan's defalcation. Goldberger offered evidence that, as a result of that defalcation, the estate was required to expend $3,772.50 in investigating and discovering that defalcation. We conclude that that expense is a direct result of Horan's breach of the bond and that, thus, Transamerica is liable therefore.[13] In addition, Goldberger has offered sufficient evidence that the services rendered were necessary to discover the defalcation and that the fees requested for those services are not unreasonable.[14] Consequently, we conclude that Transamerica is liable for the $3,772.50 in administrative costs requested by Goldberger.

■ The final issue before us is whether the estate is entitled to interest on the damages due by Transamerica and, if so, what rate of interest is applicable. Transamerica admits that it is liable for interest from the date of the defalcation,[15] but in-

10. *See* Transamerica's Brief in Opposition to Plaintiff's Claim for Damages at 4 (filed May 23, 1980).

11. 125 F.2d 887 (3d Cir. 1942).

12. *Id.* at 889. *See also, In re Ratmansky*, 7 Bankr. 829, 6 B.C.D. 1362 (Bkrtcy.E.D.Pa.1980).

13. *See, e.g., National Sun Corp. v. United States*, 327 F.2d 254 (5th Cir.), *cert. denied*, 379 U.S. 819, 85 S.Ct. 38, 13 L.Ed.2d 30 (1964) (in which the court held the surety liable for legal fees necessitated by the principal's default); *In re Perelstine*, 44 F.2d 62 (W.D.Pa.1930), *aff'd sub nom, Royal Indemnity Co. v. Sproul*, 46 F.2d 1019 (3d Cir. 1931) (in which the district court held that the expense of an audit, which

was necessitated by the former trustee's failure to perform his official duties, was payable by the surety on the former trustee's bond). *See also, United States v. Perkins*, 280 F. 546 (8th Cir. 1922).

14. *See* Exh.'s P–1 and P–2.

15. *See, e.g., In re Perelstine*, 44 F.2d 62 (W.D. Pa.1930), *aff'd sub nom., Royal Indemnity Co. v. Sproul*, 46 F.2d 1019 (3d Cir. 1931) in which the court held that a surety is liable for interest on a claim where it failed to make good on that claim after the defalcation was called to its attention.

sists that the proper rate is the legal rate of interest, which in Pennsylvania is 6%.[16] Goldberger asserts, however, that the proper rate of interest should be between 10–14% because, if Horan had not breached his duties to the estate, the estate would have been able to invest the money at the above rates of interest. We find that there is no support for concluding that the surety is liable for any interest other than at the legal rate of 6%. We will so order.

---

**16.** *See* Pa.Stat.Ann. tit. 41, § 202 (Purdon Com.　Supp.1981).