In re Michael A. FERRANTE; In re Geraldine L. Ferrante, Debtors.

Edward WALSH, Chapter 11 Trustee in Bankruptcy, Plaintiff–Appellee,

v.

NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, a Wisconsin corporation, Defendant–Appellant.

No. 93–16700.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 13, 1995.

Decided April 11, 1995.

Leonard J. Martinet, Williams & Martinet, San Francisco, CA, for defendant-appellant.

Linda Sorensen, Howard, Rice, Nemerovski, Canady, Robertson, Falk & Rabkin, San Francisco, CA, for plaintiff-appellee.

Before: NORRIS, WIGGINS, and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Northwestern National Insurance Company appeals the Bankruptcy Appellate Panel's affirmance of the bankruptcy court's summary judgment for Edward M. Walsh, Chapter 11 Trustee. Walsh had sued on a surety bond issued by Northwestern to Charles Duck, Walsh's predecessor as trustee for the estate of Michael and Geraldine Ferrante. The bankruptcy court surcharged Northwestern for proceeds that remained unaccounted for after Duck auctioned off certain vehicles of Great American Construction Company (GACC), the Ferrantes' wholly owned company. It also surcharged Northwestern for other monies that Duck embezzled. We affirm.

## BACKGROUND

Michael and Geraldine Ferrante filed their Chapter 11 petition on October 22, 1982. Charles Duck was appointed as Chapter 11 trustee. Northwestern issued two bonds totaling $500,000, ensuring Duck's faithful performance as trustee.

Michael Ferrante was the sole shareholder of GACC, an apparently insolvent corporation suspended by the State of California for failure to pay its franchise taxes. On September 29, 1983, Duck, as trustee, took control of GACC and, without leave of court, he liquidated the assets. Duck obtained auction proceeds of $231,750.96 after deducting auction expenses and after paying some of GACC's creditors. Duck deposited $15,-408.85 in a commingled bank account. This money was paid to him by a GACC creditor, Wells Fargo, which had agreed to pay the estate five percent of the auction proceeds

for its services.[1] The remaining $216,342.11 was ultimately placed in Duck's personal account. This latter amount consisted of two categories of auction proceeds: $62,960.00 from the sale of unencumbered vehicles and $153,382.11 from the sale of collateral. Two of GACC's creditors, Wells Fargo and Credit Alliance Corporation, had security interests in the collateral.

In February of 1988, more than four years after the auction, Duck filed a complaint for interpleader and declaratory relief in the bankruptcy proceedings in which he named Wells Fargo Bank and Credit Alliance Corporation. He asked the court to determine ownership of the net auction proceeds. The parties subsequently stipulated to a distribution, and on April 28, 1988, the bankruptcy court entered a judgment whereby $10,000 was to be disbursed to Credit Alliance Corporation, $2,596.00 was to be disbursed to Duck to cover attorney's fees, and the remaining balance was to be disbursed to Wells Fargo. Duck paid Wells Fargo $192,939.41, which represented the balance of the proceeds of the collateral together with interest. The remainder of the fund, $65,830.02, approximated the proceeds of the unencumbered vehicles, and was not demanded by Wells Fargo. Duck, thus, continued to hold it in his capacity as trustee, at least until he peculated it.

When Duck's defalcations were discovered, he was replaced as trustee. Edward M. Walsh, the successor trustee of the Ferrante estate, commenced an investigation of Duck's dealings in the Ferrante estate, including an accounting of the GACC auction. It was discovered that $83,834.97 (auction funds, auction fee and attorney's fees) was not accounted for in the Ferrante estate.

On May 17, 1991, Walsh commenced an adversary proceeding on Northwestern's bond to recover the funds peculated from the vehicle auction proceeds. He also sought the five percent commission paid from the auction proceeds and attorney's fees paid to the estate by Wells Fargo. The complaint further prayed for reimbursement by Northwestern of accounting and attorney's fees

---

1. Although Duck auctioned GACC property, he did this as the trustee of the Ferrante estate because, as he said, he believed he was responsible for handling GACC's affairs.

that Walsh spent investigating the missing funds and recovery of Duck's vacated interim fee award. The bankruptcy court agreed with Walsh and granted recovery on the bond.

Northwestern appealed the bankruptcy court's order to the Bankruptcy Appellate Panel. The BAP affirmed, and Northwestern in disappointment and dudgeon appealed to us. It contends that BAP erred when it did not dismiss the case for lack of jurisdiction. In addition, it contends that Walsh could not assert rights in the assets of GACC since they belonged to Wells Fargo after the April, 1988 bankruptcy court judgment. In addition, it argues that GACC was a separate legal entity from the Ferrantes' bankruptcy estate, and hence the vehicle proceeds do not belong to the Ferrante estate. Northwestern also argues that the bankruptcy court erred when it ordered it to pay the estate the five percent auction fee, Duck's vacated interim compensation, and money the estate spent on investigating Duck. Finally, it argues that BAP erred when it refused to consider Northwestern's defenses.

## STANDARD OF REVIEW

Decisions of the Bankruptcy Appellate Panel are reviewed de novo. *In re Johnston,* 21 F.3d 323, 326 (9th Cir.1994). The court of appeals and the BAP review the bankruptcy court's conclusions of law de novo and its findings of facts under the clearly erroneous standard. *Id.*

## JURISDICTION

We have jurisdiction pursuant to 28 U.S.C. § 158(b).

Northwestern argues for the first time that the bankruptcy court did not have jurisdiction over this case. Although jurisdiction was not raised in the bankruptcy court, we must consider the issue on appeal. *See McGuckin v. Smith,* 974 F.2d 1050, 1052 (9th Cir.1992) (jurisdiction must be considered *sua sponte* ).

The bankruptcy court did have jurisdiction because this case involves a core proceeding. Core matters " 'concern[ ] the administration of the estate.' " *In re Intl Nutronics, Inc.,* 28 F.3d 965, 969 (9th Cir.) (citation omitted), *cert. denied,* —— U.S. ——,

115 S.Ct. 577, 130 L.Ed.2d 493 (1994); *See In re Cinematronics, Inc.,* 916 F.2d 1444, 1449–50 (9th Cir.1990); *see also Latham v. Wells Fargo,* 896 F.2d 979, 983–84 (5th Cir.1990). Because this case evokes the Bankruptcy Act's imposition of duties on trustees to administer estate property and a surety's liability on its bond for the benefit of the estate, it cannot be gainsaid that it involves a core issue. *See In re American Solar King,* 142 B.R. 772, 773 (Bankr.W.D.Tex.1992). It is also particularly germane to the bankruptcy proceeding context, for it involves the very bankruptcy process itself. Nothing could be more important to the handling of a bankruptcy estate than the fidelity of those who are entrusted with its assets.

Northwestern also challenges Walsh's standing to maintain an action to obtain the auction proceeds. While standing *is* a jurisdictional argument, we will discuss it when we discuss the merits of the claim that the proceeds are not part of the estate assets. We will do that because we see this as just another iteration of Northwestern's theme that the peculated assets cannot be recovered by the estate, a claim which we reject.

## DISCUSSION

The major thrust of Northwestern's attack on the decisions of the bankruptcy court and the BAP proceeds from its rather crabbed view of the duties of the trustee and the assets of the estate. It, essentially, takes the position that its bond obligations relate only to assets that indisputably belong to the estate, those that cannot be claimed by anyone else. It points to the language of its bond, which promises that the trustee will "faithfully and truly account for all the moneys, assets and effects of the estate." From those words it argues that it can have no liability because the auction proceeds were not really assets of the estate, even though the estate owned all of the stock of GACC, and even though the funds came into Duck's hands as trustee of the estate. It overlooks the other language of its bond, which promises that Duck will obey the orders of the court and "faithfully perform all of his official duties as [trustee]." In that we think it very wrong, and once that error, which permeates its specific arguments, is corrected, those arguments fall.

### A. *The Vehicle Auction Proceeds.*

#### 1. *The 1988 Judgment and Standing.*

█ In 1988 the bankruptcy court entered a judgment in an interpleader action filed by Duck in which it appeared to order that money from the sale of the assets of GACC be distributed to creditors Wells Fargo and Credit Alliance Corporation. Northwestern claims that the judgment disposed of money from the sale of certain unencumbered vehicles which belonged to the business, and that deprives Walsh of standing. We disagree.

First, the record indicates that the parties to the stipulation which led to the judgment did not believe that the proceeds from the vehicle sale were included in the judgment. For instance, Duck wrote to Wells Fargo on February 23, 1987 informing it that the net balance of the auction was $216,342.11. The letter specifically mentioned that $62,960.00 of that money—"proceeds from the sale of licenced vehicles"—came from the sale of unsecured licensed vehicles. Attached to the letter was a "[r]ecapitulation" of GAAC's auction receipts. According to that document, the "money available for properly secured creditors" was $153,382.11. That specifically did not include the proceeds from the vehicles. In addition, when Duck sent Wells Fargo its check, he noted that "[t]he total amount of money available for distribution was $153,382.11." There is no record of Wells Fargo's objection to Duck's assessment of the amount owed. If the judgment was truly meant to include the other funds, one would expect that Wells Fargo would have so stated.

If the 1988 judgment did not include the proceeds from the auction of the vehicles, then it has no bearing at all on the present litigation because it involves a different claim for separate funds. *See, e.g., Blonder–Tongue Lab., Inc. v. University of Ill. Found.,* 402 U.S. 313, 323–24, 91 S.Ct. 1434, 1440, 28 L.Ed.2d 788 (1971) (res judicata requires the same claim, the same parties or their privies, and finality on the merits).

Second, if the 1988 judgment *is* binding on the present trustee, that conclusion does not aid Northwestern because that can only mean that the judgment ordered the trustee to distribute the money to certain creditors, *not* that the money must go unreimbursed by Duck or his surety. That would mean that Duck did not obey the order of the court and that he did not perform faithfully. It would also mean that the estate still owes money to Wells Fargo and that the court order continues to apply to Walsh, the new trustee. Since Walsh is the trustee, the money stolen by Duck should be returned to him. In addition, even if Wells Fargo has waived its entitlement to the vehicle proceeds, that does not bar Walsh's ability to sue for them now. The money belongs in the hands of Walsh, the current trustee, and the details of any later distribution to GACC, Wells Fargo, or others is not before us on this appeal. We need not parse the terms of the 1988 judgment, nor need we decide its current effect, beyond pointing out that whatever that might be, Walsh does have standing. As trustee, he can, indeed must, seek to "maximize the value of the estate." *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 353, 105 S.Ct. 1986, 1992–93, 85 L.Ed.2d 372 (1985). Were he to do less, he might well be held liable for breaching that duty. *See In re Conchise College Park, Inc.,* 703 F.2d 1339, 1357 (9th Cir.1983); Restatement (Second) of Trusts § 223(2)(a) (1959) (failure of successor trustee "to take proper steps to redress a breach of trust committed by the predecessor"). He had the authority to maintain this action. *See* 11 U.S.C. § 1109(b); Bankr.R. 2010(b). He has wisely and properly exercised that authority.

#### 2. *The Proceeds and the Trustee's Duty.*

█ We return, then, to the centerpiece of Northwestern's argument: it cannot be liable because the funds really came from GACC's assets. But the Bankruptcy Code charges trustees with broader duties than Northwestern's argument would allow. Trustees are required to "be accountable for all property received." 11 U.S.C. §§ 704(2) and 1106(a)(3). In addition, to be qualified as a trustee, the trustee must take out a bond which is "conditioned on [his] faithful performance of ... official duties." 11 U.S.C. § 322(a). As we have said, Northwestern's bond ensured that the trustee *would* "faithfully and truly account for all the moneys, assets and effects of the estate ... which shall come into his hands and possession, and shall [in] all respects faithfully perform all his official duties as said [trustee]."

■ Not surprisingly, courts have often held that trustees' duties extend beyond tending the undisputed assets of the estate. *See, e.g., In re Sierra Trading Corp.,* 486 F.2d 191, 193 (10th Cir.1973) (per curiam) (trustee was required to account for amounts earned from investment of money belonging to third parties in an adversary proceeding by those parties); *In re San Juan Hotel Corp.,* 847 F.2d 931, 936–38 (1st Cir.1988) (there is a broad power to surcharge trustees for forbidden acts which injure the estate or profit the trustee at the estate's expense); *In re Reich,* 54 B.R. 995, 1003, 1008–09 (Bankr. E.D.Mich.1985) (trustee's surety will be held liable where trustee had "actual possession of the property"; whether an asset was technically in or out of an estate was immaterial). In the instant case the GACC vehicles auctioned off were in the possession of Duck. Because he was trustee, he accessed them and sold them in an auction. Then he recognized that he held the assets for the estate and subject to the bankruptcy court orders. But he deposited the money into his commingled trustee account and finally misappropriated the funds to his own personal use. Northwestern does not really dispute this, and it is fatal to Northwestern's argument.

*San Juan,* from which Northwestern seeks solace, put its finger on the principle at stake here. As it said, citing *Mosser v. Darrow,* 341 U.S. 267, 274, 71 S.Ct. 680, 683, 95 L.Ed. 927 (1951), the Supreme Court has "established the general proposition that bankruptcy trustees may be held personally liable for breaches of fiduciary duty.... 'The most effective sanction for good administration is personal liability for the consequences of forbidden acts.'" 847 F.2d at 937 (citations omitted).

Here, as in *San Juan* and *Mosser,* a defense is being mounted in which it is argued on behalf of Duck (and his surety) that no loss has been suffered by the estate. But as the First Circuit, in discussing the Supreme Court's reaction to that argument, said:

To that, the Court responded by noting that determining the amount of damage the trustee caused, if any, was difficult; the Court then added: "But equity has sought to limit difficult and delicate fact-finding tasks concerning its own trustee by

precluding such transactions for the reason that their effect is often difficult to trace, and the prohibition is not merely against injuring the estate—it is against profiting out of the position of trust." *Mosser,* 341 U.S. at 273, 71 S.Ct. at 683. With this passage, we think, the Court clearly rejected the idea that a proven, quantifiable loss to the estate is a prerequisite to personal liability for trustees.

*Id.* at 937.

Ah, says Northwestern, but in *San Juan* the court also decided that if the faithless trustee did not injure the estate but only injured third party creditors of the estate, there could be no recovery on the estate's behalf. *Id.* at 938. The court expressed a concern that faithless trustees might otherwise be subjected to litigation by the estate and by the creditors. *Id.* We need not consider whether the court should have had *that* concern because even were we to accept it, the outcome would be no different here. In *San Juan,* the court was referring to a situation where the creditors suffered a direct harm and the estate suffered no harm at all. Here it cannot be said that a direct injury has been perpetrated upon creditors, nor can it be said that there could be no harm to the estate. Ferrante guaranteed the obligations of GACC and to the extent that those were not discharged there could be a claim against the estate itself. The taking of funds from GACC could not, therefore, be ignored. If, as Northwestern argues, Wells Fargo has given up all of its rights, that surely does not mean that the peculated funds should not be returned to the estate's trustee, especially since the estate itself is the sole shareholder of GACC. Whether GACC should or can be liquidated or whether it could or will sue the estate is not the point. In *San Juan,* the items which were disallowed were such things as union dues which went unpaid. At least in the short run, that benefited the estate by increasing its assets. *Id.* at 940–54. But here the actions of Duck did not benefit the estate at all. Had he simply retained the GACC funds in the estate it might have been so. He did not, and now he must return them, as must his surety.

In sum, when Duck's tenure ended he was accountable for funds that came into his

hands as trustee of the estate. He was obligated to turn over those funds to the new trustee. When he failed so to do he and his surety became liable. Whether the estate will be able to retain the funds or will have to relinquish them in whole or in part is no business of Duck or his surety. That determination must be made in later proceedings. What is clear is that the funds must be turned over.

B. *Other Surcharges.*

Once Northwestern's arguments about the vehicle proceeds fall, its other contentions must fall with them. Thus, we may dispose of them more quickly.

■ The bankruptcy court determined that the $15,408.85 which Wells Fargo paid Duck for liquidating its collateral was an improperly gained fee which belonged to the estate. The BAP's affirmance of that ruling was not erroneous. Trustees are entitled to fees only pursuant to 11 U.S.C. § 326(a). *In re Dinsmore Tire Ctr., Inc.,* 81 B.R. 136, 138 (Bankr.S.D.Fla.1987). It is true that costs ·for the preservation or disposition of creditors' property are allowable under 11 U.S.C. § 506(c). However, as Northwestern admitted, the auction fee money was received for the benefit of the estate. *See id.* Even if it were a gift to the estate, it became estate property. Duck breached his obligations in receiving the money and not turning it over to the estate. Northwestern is accountable. *In re Traffic Safety Co.,* 21 B.R. 669, 672 n. 8 (Bankr.E.D.Pa.1982) ("A breach by the principal of any one of the conditions of the bond will impose liability on the surety.").

■ The 1988 judgment in Duck's interpleader action also provided that the estate was to receive $2,596.00 in attorney's fees. The bankruptcy court determined that Duck "stol[e]" this amount, and Northwestern does not dispute that. Northwestern contends that the money was to be paid to Wells Fargo's law firm, Pillsbury, Madison & Su-

tro. To the extent that the money was received in order to pay for the fees of any counsel in the interpleader action but embezzled instead, the money must be repaid to the estate so that it may pay off its debt and obey the court order. In the alternative, if the money was received by Duck as reimbursement for his participation in the interpleader action, it must be turned over to the estate because he was only entitled to statutory fees, and must be deemed to have held the funds for the estate.

■ The bankruptcy court ordered that Northwestern pay back the $16,996.81 that the faithless Duck recovered as an interim fee award. Those fees had earlier been vacated by the bankruptcy court. A trustee who embezzles or otherwise breaches his trust forfeits his fee. *See, e.g.* Restatement (Second) of Trusts, § 243 (1959); *cf. In re Endeco, Inc.,* 675 F.2d 166, 167 (8th Cir.1982) (under the former Bankruptcy Act bankruptcy court had authority to withhold compensation if trustee misused bankrupt's assets). Duck forfeited his fee when he breached his fiduciary duties. Consequently, his surety must reimburse the estate for any of Duck's interim fees which were paid to and not returned by him.

■ Finally, the bankruptcy court held Northwestern liable for the costs of investigating Duck's violations. Northwestern objects to that, but "the surety is liable for the increased administrative costs incurred by the estate in investigating the former trustee's defalcation." *Traffic Safety,* 21 B.R. at 671. Walsh provided evidence that significant sums were spent on bringing Duck's activities to light. The bankruptcy court did not err when it awarded the estate its investigation costs.[2]

**CONCLUSION**

■ When a trustee receives funds as trustee, he holds them as a fiduciary and is accountable for them. *See* Restatement

---

2. Northwestern presents a potpourri of defenses it would like to raise against any third party claims. We agree with the BAP that it can raise no such defenses here. *E.g.,* it seeks comfort in the fact that GACC is a suspended California corporation which cannot sue for itself. *See* Cal.Rev. & Tax Code § 23301; *Boyle v. Lakeview*

*Creamery Co.,* 9 Cal.2d 16, 18, 68 P.2d 968 (1937). We will resist the sententious "so what," but that's what any response really comes to. This is not an action by or for GACC. It is an action to require Duck's surety to return funds to the estate, and the one certainty is that neither Duck nor his surety has a right to refuse.

(Second) of Trusts § 170(1) (1959) (trustee must administer trust *solely* in beneficiary's interest); *id.* § 172 (trustee must render clear and accurate accounts). We would have thought that proposition to have been ineluctable. Judges have been saying as much for centuries. Yet attempts by faithless trustees to avoid their obligations continue, and new excuses are regularly erumpent. It is so here.

Here Duck, the trustee of a bankruptcy estate, peculated funds which were in his hands as trustee. He was accountable for those funds, and his surety, Northwestern, pledged itself to pay if he was faithless. It now seeks to avoid its obligations and principally relies on the theory that others might have a claim to the funds. We hold that its argument cannot succeed: the funds must be placed into the hands of the new trustee, Walsh, and under the control of the bankruptcy court. The proper recipient will ultimately be identified; it might well be that they will be retained in the estate itself. One thing is certain: neither Duck nor his surety is entitled to deny them to the current trustee.

AFFIRMED.