**WEATHERSFIELD FARMS, INC., Appellant,**

v.

**FIRST INTER–STATE BANK, Appellee.**

**Civ. A. No. 81–190.**

United States District Court, D. Vermont.

Oct. 12, 1981.

Gary T. Brooks, Brownell & Hoyt, Norwich, Vt., for appellee.

Michael J. McGarry, Burlington, Vt., for Weathersfield Farms, Inc.

MEMORANDUM OF DECISION

HOLDEN, Chief Judge.

This case comes before the court on appeal from a final order of the United States Bankruptcy Court for the District of Vermont, dismissing a proceeding instituted by the appellant under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* (1978). *In re Weathersfield Farms, Inc.*, 14 B.R. 574 (Bkrtcy.Vt.1981) (Marro, J.). The appellee has moved to affirm the order of the Bankruptcy Court and the parties have submitted both oral and written argument on that motion, which the court now considers in conjunction with the Record on Appeal.

Under Bankruptcy Rule 810, the district court must accept the referee's findings of fact unless they are clearly erroneous. Here, most of these findings appear to be undisputed. The relevant facts show that Weathersfield Farms, Inc. (the debtor) holds 250 acres of unimproved land in Thetford, Vermont. Raymond Phelan is the president and sole shareholder of the debtor, which was incorporated in 1971 for the purpose of becoming a "therapeutic community" for alcohol and drug abusers. This purpose has never been realized.

In 1972, the debtor borrowed $31,000 from the appellee, First Inter-State Bank (the Bank) and secured the loan with a mortgage on the real estate. The debtor ceased paying the mortgage and local taxes in November 1974. In January, 1978, without the consent of the Bank, the debtor transferred the land without consideration to Visualists, Inc., a New York corporation of which Phelan was again the sole shareholder. Judge Marro found that the debtor had made the transfer in order to delay anticipated foreclosure proceedings, which the Bank instituted in February, 1980. After the debtor's default and the running of the redemption period, a decree of foreclosure was entered in the Superior Court of Orange County on July 9, 1980.

On August 29, 1980 the debtor filed its Chapter 11 petition in the Bankruptcy

Court. The Bank moved for relief from the automatic stay provisions of Chapter 11 and also moved to dismiss. After three hearings, Judge Marro issued a Memorandum and Order in which he exercised the equitable power of the court to attribute to the debtor the equity in the property, valued at $35,000. He therefore denied the Bank's motion for relief from the automatic stay. He also denied the motion to dismiss for lack of good faith, finding that even though the debtor had not proposed a reorganization plan within the 120 days allowed by the statute, it should be given the opportunity to file a plan and, if it was capable of effectuation, thereby demonstrate its good faith. *Id.*, No. 80–191 (Dec. 8, 1980).

The debtor submitted a first plan and, after being given the opportunity to amend it, was heard at a confirmation hearing. The plan consisted primarily of two activities: cutting timber to obtain cash to start the rehabilitation project, and giving the Bank a mortgage on the equity in the property. The court found that the administrative expenses and the cost of complying with state environmental regulations would absorb most of the cash obtained from the timber, requiring that the debtor borrow more money to effectuate the plan and thereby further impairing the interest of the Bank, the only secured creditor. The court noted that although the debtor spoke of the possibility of obtaining various federal grants, no funds had materialized and the economic climate did not auger success. The court concluded that the reorganization plan was visionary, impractical and speculative, and had not been proposed in good faith. Confirmation was therefore denied. *Id.* (Mar. 17, 1981).

The Bank renewed its motion to dismiss, and at the hearing on that motion, the debtor submitted a second reorganization plan. In a third Memorandum and Order issued May 11, 1981 Judge Marro emphasized the "inherent power and duty under § 1112 of the Code to inquire into the good faith of the Debtor seeking Chapter 11 relief." He ruled that "a careful review of the Debtor's New Plan for Reorganization" required the same conclusion as the first plan: that the Debtor was using the procedure of Chapter 11 to avoid the consequences of the state foreclosure action. This showing of bad faith warranted dismissal under § 1112(b), and the Bank's motion was granted.

The issue raised by this appeal is whether a Bankruptcy Court can dismiss a petition under § 1112(b) for lack of good faith, without holding a confirmation hearing on each proposed plan of reorganization. The debtor argues that the issue of "good faith", appearing in § 1129(a) as a requirement for confirmation and not appearing in § 1112(b) as a basis for dismissal, cannot serve as grounds for dismissal except after a confirmation hearing.

█ It is agreed that the denial of the debtor's first plan did not preclude it from submitting a second proposal. However, as Judge Marro noted, any petition for Chapter 11 relief must be made in good faith. If this prerequisite to equitable relief is absent, the Bankruptcy Court may exercise its discretion to dismiss the proceeding "for cause" under § 1112(b). The legislative history of the Code, widely cited in recent case law, clearly establishes that a lack of good faith constitutes sufficient cause for dismissal regardless of whether it is specifically articulated in § 1112(b). *See, e. g., In the Matter of Nancant*, 8 B.R. 1005 (Bkrtcy. Mass.1981); *In re G–2 Realty Trust*, 6 B.R. 549 (Bkrtcy.Mass.1980).

█ In this case, the Bankruptcy Court gave the debtor several opportunities to demonstrate that it sought equitable relief under Chapter 11 in good faith. The Bank was thereby hindered in its right to foreclose on the property. After the debtor filed its second plan for reorganization, it became clear to the Bankruptcy Court that the debtor could not effectuate any of its proposals and was not proceeding in good faith. The record amply supports this conclusion, which rests on sound legal principles. The Bank's motion to affirm the decision of the Bankruptcy Court is therefore granted.

It is so ORDERED.