In re BRANIFF AIRWAYS, INC., et al., Debtors.

BRANIFF AIRWAYS, INC.; Braniff Airways, Inc.—IAM Pension Plan; and Alan K. Stewart, William C. Oliver and Steven S. Turoff, Constituting the Retirement Committee of the Plan, Plaintiffs,

v.

INTERFIRST BANK, DALLAS, N.A. as Trustee; and S.E. Edmondson, F.C. Irvin, and R.L. Chapman on their own behalf and on behalf of all Plan Beneficiaries, Defendants.

BRANIFF AIRWAYS, INC.; Air Line Pilots Association, International; Braniff Airways, Inc., Retirement Plan for Pilots, Part A; Dale States, Jack Boisen, John Skiba and Richard Russell, constituting the Retirement Board of Braniff Airways, Inc. Retirement Plan for Pilots, Part A, Plaintiffs,

v.

BANKERS TRUST COMPANY as Trustee; and W.P. McDonald, V.A. Cebell, III, N.G. Robinson and V.A. Quattlebaum on their own behalf and on behalf of all Plan Beneficiaries, Defendants.

BRANIFF AIRWAYS, INC., and the Braniff Airways—Teamsters Pension Plan, Plaintiffs,

v.

INTERFIRST BANK, DALLAS, N.A. Trustee; and H.G. Cooper, J.M. James, and I.C. Simpson, on their own behalf and on behalf of all Plan Beneficiaries, Defendants.

BRANIFF INTERNATIONAL CORP.; Braniff Airways, Inc.; Retirement Plan for Management Employees of Braniff Airways, Inc.; and Alan K. Stewart, William C. Oliver, and Steven S. Turoff, constituting The Retirement Committee of the Plan, Plaintiffs,

v.

INTERFIRST BANK, DALLAS, N.A. as Trustee; and Charles M. Mathews, R.G.

Peterson and K.L. Mullick on their own behalf and on behalf of all Plan Beneficiaries, Defendants.

Bankruptcy No. 482–00369.

Adv. Nos. 482–0336 to 482–0339.

United States Bankruptcy Court, N. D. Texas, Fort Worth Division.

Aug. 31, 1982.

See also, Bkrtcy., 22 B.R. 1005.

Robert S. Savelson, Cohen, Weiss & Simon, Michael Crames, Levin & Weintraub, New York City, Jack Balzersen, Rochelle, King & Balzersen, Dallas, Tex., James Riley, .Gen. Counsel, Braniff Int'l World Hdqts. Dallas-Ft. Worth Airport, Tex., Melvin Garbow, David Bonderman, Arnold & Porter, Washington, D.C., for plaintiffs.

**1002**

Warren Shipman, McGown, Godfrey, Decker, McMacklin & McClane, George Crowley, McDonald, Sanders, Ginsburg, Phillips, Maddox & Newkirk, Ft. Worth, Tex., Charles Plenge, Johnson, Bramberg & Leeds, James Hicks, Hicks, Gillespie & James, Dallas, Tex., Edward Kemble, Cantey, Hanger, Gooch, Munn & Collins, Ft. Worth, Tex., Stroock & Stroock & Lavan, Washington, D.C., for defendants in No. 482–0337.

Ernest W. DuBester, Highsaw & Mahoney, Washington, D.C., Philip Smith, Jr., Akin, Gump, Strauss, Haver & Feld, Dallas, Tex., John E. Collins, Irving, Tex., for defendants in No. 482–0336.

Morgan Williams, Mehl, Williams & Cummings, Ft. Worth, Tex., Barbara Houser, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., for defendants in No. 482–0339.

L.N.D. Wells, Jr., and Mr. Edward Cloutman, III, Mullinax, Wells, Baab & Cloutman, Dallas, Tex., for defendants in No. 482–0338.

## MEMORANDUM OPINION

JOHN FLOWERS, Bankruptcy Judge.

The Debtor, Braniff Airways, and the other named Plaintiffs filed Motions for Interim Relief in each of four pending adversaries requesting this Court to authorize a reduction in the amounts to be received for the month of September by beneficiaries of four Braniff pension plans (the Plans). Plaintiffs name the trustees of the various Plans and representative members of each group of beneficiaries as Defendants. Motions objecting to this Court's jurisdiction based on *Northern Pipeline Construction Co. v. Marathon Pipe Line Company,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d —— (1982), were overruled at trial in view of the Supreme Court's stay of its decision until October 4, 1982. Accordingly, I find this Court has jurisdiction. 28 U.S.C. § 1471. The Plaintiffs have requested certification as a class action and from the evidence presented upon the request for interim relief, it appears probable certification will be granted. For purposes of this discussion, the classes may be described generally as follows: (1) beneficiaries of the pension plans who are vested and currently being paid benefits; (2) beneficiaries who are vested but not yet being paid (in most instances because they have not yet reached retirement age); and, (3) a group of pilots who have requested but have not received a lump sum payment of vested pension benefits. The International Association of Machinists and Aerospace Workers (IAM), the Air Transport Dispatchers and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America (Teamsters) were all permitted to intervene on behalf of certain interests they represent. Individuals, Ross and Hulsey, appearing pro se as pilots seeking lump sum payments were also permitted intervention. The Defendant trustees who hold assets of the four Plans seek guidance from the Court regarding the amounts of the payments to be made. Plaintiffs' motions for interim relief is vigorously opposed, primarily by the Teamsters, IAM, and certain individual pilots presently drawing benefits or requesting a lump sum disbursement. The Pension Benefit Guaranty Corp. while not seeking formal intervention has filed a statement supporting the Plaintiffs' request for interim relief.

The Debtor administers the four pension plans at issue here, the Pilot's Plan, the Management Plan, the Machinist's Plan and the Teamster's Plan. Under three of the Plans, the beneficiaries are entitled to receive and have been receiving benefits based on a formula keyed to the beneficiary's length of service with the Debtor. In the case of the Pilots, the monthly benefit is keyed to a percentage of the beneficiary's final earnings. Only the pilots have the option of requesting payment of benefits in a lump sum. All four plans are unable to meet their full liabilities. The inability of the plans to meet the promised level of benefits results from the fact that it is standard industry practice for pension plans to be computed on an actuarial basis which assumes the continuing operation of the employer. When the employer ceases operation as the Debtor has done, the actuarial computations are skewed causing a shortage of funds to pay benefits at the promised level to all eligible employees.

All the Plans are subject to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* (ERISA). The Debtor ultimately seeks termination of all the Plans in accordance with ERISA provisions. While the issue of termination is not currently before the Court, an understanding of the ERISA termination provi-

sions and the role of the Pension Benefit Guaranty Corp. (P.B.G.C.) is essential to the determination of the pending issues.

The P.B.G.C. is a quasi-governmental agency which administers a self-financing pension plan termination insurance program. It guarantees the payment of vested benefits at certain statutory levels. The guaranteed levels are usually below the levels provided in the plans as is the case here. Pension plans pay the P.B.G.C. annual premiums to effect this insurance coverage. To date, the Debtor has made all premium payments as they come due.

The P.B.G.C. plays an active role in the termination of any ERISA plan. ERISA permits two types of termination, voluntary termination initiated by the plan administrator and involuntary termination initiated by the P.B.G.C. See 29 U.S.C. §§ 1341, 1342. For voluntary termination the P.B.G.C. must determine that the plan's assets are sufficient to fund the first four of six benefit categories defined in the statute. The plan administrator oversees the distribution of the funds and no liability is imposed on the employer for the termination. Involuntary termination is another matter. It is required when the available assets of the plan are insufficient to fund benefits through the fourth benefit category. The employer is liable to the P.B.G.C. for a limited amount as defined in 29 U.S.C. § 1362. Beneficiaries of the terminated plan then receive monthly benefits limited to priority payments pursuant to ERISA and payments at the level guaranteed by the P.B.G.C.; they are entitled to no other benefits.

The date of termination of the plan is a date agreed upon by the plan administrator and the P.B.G.C. or set by the Court if they are unable to agree. Curiously, it may apparently be antecedent to the date of notice of termination. *P.B.G.C. v. Heppenstall Co.,* 633 F.2d 293 (Third Cir. 1980). Here the Debtor in its capacity as plan administrator has asked that the termination date be set as May 12, 1982, although notice of termination was not given until August 20, 1982. That matter is not now before the Court and will become an issue only if the plan administrator and the P.B.G.C. are unable to agree. Of present importance is the fact no termination date has yet been established and therefore unless the Court orders otherwise the trustees are obligated to pay benefits at plan levels.

Debtor has requested injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings by Rule 765 of the Bankruptcy Rules of Procedure. I am guided by the four point test set forth in *Martinez v. Mathews,* 544 F.2d 1233 (5th Cir. 1976) and will consider "the plaintiff's likelihood of prevailing on the merits, the possibility of irreparable harm to the plaintiffs, the counterbalancing risk of harm to the defendants, and the public interest." *Id.* at 1243. The discussion is easiest to follow when the Plans are grouped with the Pilot's and Management Plans comprising one group and the Teamster's and Mechanic's Plans comprising the other.

Turning to the Pilot's and Management Plans, although the final figures had not been completed at the time of the hearing the best available information indicates these Plans are probably sufficient. The Debtor seeks an immediate reduction of the September payments to P.B.G.C. guaranteed levels and cessation of lump sum payments to preserve assets of those two Plans so that a determination of sufficiency can be made by the P.B.G.C. The Debtor then intends to purchase commercial annuities with Plan assets and thereby assure the beneficiaries of monthly payments in excess of the level of payments guaranteed by the P.B.G.C. The evidence of probable sufficiency supports the likelihood that the Debtor as Plaintiff will prevail and be able to enact this plan.

The second necessary element is the possibility of irreparable harm to the plaintiffs. The Debtor as Plaintiff is liable as the administrator of the Plan; the responsibility of the administrator is one of a fiduciary which must act in the interest of all the Plans' participants and beneficiaries. The Debtor faces a unique conflict of interests on the part of the beneficiaries. Payment of the promised benefits (and lump sum payments in the Pilot's plan) will deplete assets of the Plans and give the beneficiaries in "pay status" a windfall to the detriment of those vested beneficiaries not yet entitled to receive payments. As the assets are depleted, the possibility of a sufficiency determination by the P.B.G.C. is endangered and there will be fewer assets with which to buy commercial annuities. Preservation of the assets protects the interests of those vested but not yet receiving benefits while full payment inures to the benefit of

those currently receiving payments. Clearly, the Debtor cannot fulfill its fiduciary responsibilities to both classes of beneficiaries; therefore any action it takes exposes it to liability.

The next element to be considered is the extent of the harm to the Defendants. There is the obvious harm of denying the pension beneficiary the promised level of payment on short notice. Counter-balancing this is the fact Defendants are exposed to recoupment. Under 29 U.S.C. § 1345, the trustee of a terminated plan is entitled to recoup certain overpayments within the three-year period immediately preceding the time the plan terminated.[1] Defendants are already exposed to some possibility of recoupment under the statute. Allowing full payment of the September benefits exposes them to an even greater recoupment liability. Recoupment is a two-edged sword; the pain of recoupment to the beneficiaries outweighs the fleeting benefits of full payment in September.

Furthermore, the Court must balance the harm to the two classes of Defendants; those currently receiving benefits and those vested but not yet in pay status. The harm to the latter class is caused by a depletion of the assets which would reduce the long term benefits to all Defendants. This interest outweighs the right Defendants currently in pay status have in continuing to receive promised benefits to the eventual detriment of all Defendants.

The final consideration is the public interest. As expressed in 29 U.S.C. § 1001, there is a public interest in the fair and even-handed administration of pension plans established pursuant to ERISA. Allowing full payment of the promised benefits to those in pay status thwarts the statutory goal since those beneficiaries receive a windfall at the expense of other beneficiaries.

The decision in this case is difficult and is made with full cognizance of the temporary hardship Defendants will face. However, Plaintiffs have satisfied the four elements of *Martinez* and are entitled to have the interim relief they request. Therefore, payments made to the beneficiaries will be at the levels guaranteed by the P.B.G.C. and all lump sum payments to pilots attempting to exercise this option are denied.

The status quo will thus be preserved for the two competing interests.

Turning now to the Teamster's and Machinist's Plans, an essential element of the *Martinez* test is missing. These Plans are depleted beyond the point of sufficiency and it is inevitable that they will be taken over and administered by the P.B.G.C. as soon as a termination date is determined. There is no doubt that the beneficiaries will receive only those payments guaranteed by the P.B.G.C. after September. The Debtor does not face any liability as a fiduciary because payment of the promised level of benefits now does not harm the vested beneficiaries not yet in pay status. Whether the assets are preserved does not increase or decrease the amounts received in the future of any beneficiary. Therefore the Debtor in its fiduciary capacity is not faced with the possibility of irreparable harm as in the Pilot's and Management Plans. No other Plaintiff is either. The P.B.G.C. has chosen not to be a party therefore I will not consider any potential harm to it.

The Debtor faces the possibility the P.B.G.C. may assert a claim against its estate for recoupment under 29 U.S.C. § 1362 for certain shortages. However, the Debtor's responsibility under the statute, 29 U.S.C. § 1104(a), is to act "solely in the interest of the [Plan's] participants and beneficiaries". Preservation of the Debtor's assets is not a justified objective I can consider in this context. The essential element of irreparable harm to the plaintiffs not having been established, the requested relief is denied and the September payments will be made at levels promised in the Teamster's and IAM plans.

---

1. A trustee may be appointed under 29 U.S.C. § 1342.