In re Alfred R. GUGLIELMO & Sharon E. Guglielmo, Debtors.

Thomas J. WARD, Floyd A. Sinclair and Sinclair Realty, Plaintiffs,

v.

Alfred R. GUGLIELMO & Sharon E. Guglielmo, Defendants.

Bankruptcy No. 81–00363.
Adv. No. 82–0083.

United States Bankruptcy Court,
M.D. Louisiana.

April 22, 1983.

Peter J. Butler, New Orleans, La., for plaintiffs.

David M. Bratcher, Baton Rouge, La., for debtors/defendants.

## REASONS FOR JUDGMENT

A. LEON HEBERT, Bankruptcy Judge.

This matter arises out of a motion by the above-named plaintiffs seeking enforcement of a judgment rendered against the above-named defendants and entered on September 13, 1982.

The Court has re-examined the trial record in this proceeding, as well as the entire case of which this adversary proceeding is but a small part. The Court has also carefully considered the memoranda submitted by both of the parties herein. From a review of all of the evidence before the Court, including that contained in the case record of which this Court takes judicial notice, the Court has formed the opinion herein thus disposing of the plaintiffs' motion.

Alfred and Sharon Guglielmo filed a voluntary petition with this Court on August 14, 1981, seeking a relief under the provisions of Chapter 11 of Title 11 of the United States Code. Pursuant to the provisions of Chapter 11, these debtors-in-possession retained complete control and possession of the estate's property, subject to the supervision and jurisdiction of the Court under Section 1471 of Title 28 of the United States Code.

What comprised the property of the estate in the case is a question creditors have repeatedly sought answered. Demands in several proceedings for more specificity and disclosure were made by creditors, and the good faith of the debtors was an issue that surfaced in the context of alleged omissions of property of the estate from the schedules.

Most recently, in the case, this Court abstained from entertaining the application for compensation by the debtors' attorneys until such time as creditors are satisfied that a full disclosure of all of the debtors'

assets has been made. Meanwhile, the stay remained in effect, perhaps to the prejudice of creditors.

The issue now before the Court, in the context of whether these debtors have willfully and contemptuously refused to obey a lawful order of the Court, again focuses on whether these debtors have exercised good faith in the administration of the estate. The facts in the particular instance were, in part, drawn from the trial, and are clear to the Court.

Listed in the schedules and various documents filed by the debtors since August 14, 1981, as an asset of the estate is a partnership interest in Ridgefield Apartments, a partnership in commendum ("Ridgefield"). Also listed is a 100% stock ownership interest in a corporation known as Lager, Inc. Lager, Inc. was the alleged managing agent for the Apartment complex, while Mr. Guglielmo was the managing partner of the partnership in commendum.

Mr. Guglielmo effectively had managerial capacity in the operation of the Apartment complex, either as the President of Lager, Inc. or as the Managing Partner of the partnership in commendum. It was plain to the Court that if Mr. Guglielmo was relieved of his duties in one position, his control over the management of the Apartment complex would be preserved with his continuance in the office of the other position. Whether as "President" or as "Managing Partner," Mr. Guglielmo was the individual destined to "call the shots" regarding the operation of the Apartment complex.

Mr. Guglielmo and his spouse continued the possession of the assets in the estate *in custodia legis,* as if a separate trustee had been appointed to administer the assets. The Court determined at the trial in this adversary proceeding that Mr. Guglielmo was allowing the value of the Ridgefield Apartment interest to depreciate, through his failure to comply with the standards required in the Code of Federal Regulations regarding HUD housing.

The complaint in this matter was filed April 20, 1982, by the above-named plaintiffs in an attempt to remove Mr. Gugliel-mo from the management and control of the Apartment interest. The trial was held, without a jury on August 5, 1982, and on August 23, 1982. The defendants were given en wide latitude, and every opportunity, to rebut the claims of said plaintiffs, which included the suggestion that these defendants were not in good faith in their dealings with these particular plaintiffs. The Court was not convinced, however, that Mr. Guglielmo was totally innocent of the allegations lodged against him. As Managing Partner or as President, Mr. Guglielmo allowed the asset value to depreciate by allowing the Apartment complex to deteriorate contrary to HUD regulations and sound business practices of preserving partnership assets. As a matter of fact, the Court determined that Mr. Guglielmo breached his fiduciary duties to his partners. The Court sought to alter destiny.

Part of the remedy sought by the plaintiffs would have required Mr. Guglielmo to divest himself of his partnership interest. The Court felt that such a remedy would be unnecessary at the time, because it was apparent to the Court that the problem was only *management* of the asset, not the *ownership.*

On September 13, 1982, the Court ordered the *debtor-in-possession,* Mr. Guglielmo, to divest himself of the management of the Apartment complex. It was the intent of the Court by entering that order that Mr. Guglielmo, whether as President of Lager, Inc. or as "Managing Partner" of Ridgefield, no longer would have *anything* to do with *management* of the Apartment complex.

What the defendants failed to realize was that the Court was concerned with the administration of an asset of the estate by a *debtor-in-possession.* The Court was exercising its power to limit and supervise the administration by the "trustee" of an asset, so that the value would appreciate with proper management to the benefit of the debtors, their creditors and all the parties in interest in this case.

The Court particularly ordered that Mr. Guglielmo produce the records and relinguish same to his partners, the plaintiffs herein. The books and records germane to the management of the Apartment complex would have given the partners adequate information regarding the list of tenants occupying the complex, what rents were owed, what debts and expenses were incurred, and what the true financial condition of the partnership was. The Court did not order the President of a corporation or the Managing Partner of a partnership to relinguish such books and records.

Succinctly, the Court sought to reverse the damage which was apparently done, and entered judgment on September 13, 1982. Under Rule 62(a), applicable by Rule 762 of the Rules of Bankruptcy Procedure to this adversary proceeding, the judgment became executory on September 23, 1982, ten days after it was entered. An appeal was taken from the judgment, but a stay under Rule 805 of said Rules of Bankruptcy Procedure was never sought, nor was one ever granted.

The evidence in the record supports the conclusion that Mr. Guglielmo never intended to abide by an adverse ruling the Court would render as to him. According to the testimony elicited from Mr. Lucius A. Tyson, Jr. during a deposition take March 9, 1983, Mr. Guglielmo signed a management contract, offering as Managing Partner of the partnership and accepting as President of Lager, Inc., which was hand delivered to Mr. Tyson July 28, 1982, wherein Lager, Inc. would be the managing agent for Ridgefield. Mr. Tyson, as a Loan Specialist in the Realty Division of the United States Department of Housing and Urban Development, and supervisor of the Ridgefield project, testified that the contract received by his division on August 11, 1981, covering the period from October 1, 1981 until September 30, 1982, also signed and executed by Mr. Guglielmo in both capacities was held in suspense, and never approved by HUD, because the government agency was aware of legal problems. Mr. Tyson's testimony was clear that Ridgefield Apartments was being managed by a party pursuant to

an agreement which has not been approved by HUD (at page 9; Exhibit "B"). This management, apparently, is a technical violation of the federal regulations of HUD.

By the agreement, however, Lager, Inc. would have the managerial influence that Mr. Guglielmo as a Managing Partner would ordinarily exercise. The problem suggested by counsel for the debtors is that the rights of Lager, Inc., and its contractual obligations, are not before the Court, and consist of state law issues of contract law. The Court, however, believes that as a *debtor-in-possession,* Mr. Guglielmo took action which affected the value of an asset of the estate, and as the President and 100% share holder of Lager, Inc. is still in the position to control the management of the Apartment complex—something he was enjoined from doing as of September 13, 1982.

The execution of the agreement by Mr. Guglielmo, acting as agents for both parties to the contract, at a time when discovery was on-going in this adversary proceeding which focused on his right to act for one of those parties is indeed suspect. As it happened, an adverse ruling as to Mr. Guglielmo was entered, but, through the guise of Lager, Inc., Mr. Guglielmo continued the management of the complex. As is evident in the record and particularly the deposition of Donald J. Howerton, a partner in the firm which audited Ridgefield's financial transactions for the 1982 year, Mr. Guglielmo himself, willfully and deliberately ignored the Court's order requiring Mr. Guglielmo to cease any managerial relationship he might have with the complex. His callous disregard of the judgment is evident.

From Mr. Guglielmo's deposition in Exhibit "A", the Court notes the following colloquy:

"Q. You knew you were no longer the managing partner of Ridgefield Apartments shortly after September 23, 1982?"

"A. Yes."

"Q. Yet you continued to discuss the affairs of Ridgefield Apartments

with the accounting firm after September 23rd, 1982?"

"A. As the managing agent, yes."

Also, the Court notes (deposition of Donald J. Howerton, page 17) that Mr. Guglielmo signed a draft in the approximate amount of $2,000.00, on behalf of Ridgefield, payable to the accounting firm for accounting services rendered to the partnership interest, after December 1, 1982. Mr. Guglielmo, in all capacities was ordered to refrain.

The scheme is evident to the Court: to hedge his bet against an adverse ruling in this adversary proceeding, Mr. Guglielmo attempted to maintain managerial control over the Apartment complex as President of Lager, Inc. by executing, shortly before trial in this matter, a "contract" on behalf of both Ridgefield and Lager, Inc. covering the period from October 1, 1982 to September 30, 1983.

The motive behind such action is equally evident to the Court, upon this Court's examination of the financial record of Lager, Inc. which were placed into the record along with the other monthly financial reports of the debtors-in-possession. Mr. Guglielmo receives a compensation plus benefits from Lager, Inc., which is paid by the partnership interest. This self dealing and the benefits resulting therefrom probably would have been diminished, if not extinguished, had the plaintiffs been able to eliminate Mr. Guglielmo as Managing Partner and terminate Lager, Inc. as managing agent.

Before Mr. Guglielmo was subjected to the September 13, 1982, order, he indeed had the capacity to enter into contract on behalf of Ridgefield. The contract he entered into with Lager, Inc., however, is suspect, and in the circumstances related above, leaves the Court with the conclusion of fact that it was part of an elaborate scheme to protect Mr. Guglielmo's self interest in the face of any adverse ruling by this Court. Mr. Guglielmo was, indeed, in bad faith.

The judgment of the Court entered September 13, 1982, sought to prevent Mr. Guglielmo from managing the Apartment complex, and from managing the partnership interest. After the order was entered, the debtor had constant contact with the partnership's accounting firm, and even selected the firm for the 1982 audit. Mr. Guglielmo retained all of the records and books of the Apartment complex interest and made no attempt to advise the banks that he was no longer Managing Partner (pages 53–54 of deposition; Exhibit "A").

What the debtor-in-possession ignored, however, was that the order or judgment was not directed to a President of Managing Partner, but a *Debtor-in-possession* —and Mr. Guglielmo was willing to sacrifice the value of an asset of the estate over which he is charged to protect his personal interest and possible "future income" which would not inure to the benefit of his creditors. Not only has Mr. Guglielmo, through his selfish conduct, breached his fiduciary duty to his partners, but he has compromised his fiduciary duty to his creditors in this bankruptcy. The evidence supports the finding of fact, even giving the debtors the benefit of doubt, that they are in bad faith in the administration of the estate.

### CONCLUSION OF LAW

There is no doubt that the Court now has jurisdiction to enforce its judgment. Application of Rules 769, 770 and 920(a)(2) of the Rules of Bankruptcy Procedure, pursuant to Rule 29 of the Local Rules of the United States District Court for the Middle District of Louisiana, is constitutionally firm. *In re Braniff Airways, Inc., per curiam* 700 F.2d 214 (5th Cir.1983); *In re Motion to Dismiss: Constitutionality of Jurisdiction of the Bankruptcy Court,* 23 B.R. 334, 355 (Bkrtcy. N.D.Ga., 1982); *In re Cherry Pond Coal Co.,* 21 B.R. 592 (D.C., S.D., W.Va., 1982); *In re Braniff Airways, Inc.,* 22 B.R. 1001, 1005 (Bkrtcy., N.D.Tex., 1982); *In re Stillman,* 26 B.R. 834, CCH ¶ 69,068 (Bkrtcy.Md., 1983).

■ It cannot be denied that this Court possesses the inherent power to enforce compliance with it lawful orders through civil contempt sanctions. *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531,

1535, 16 L.Ed.2d 622, 627 (1966). The circumstances in this instance are more complicated by the fact that it is the debtor-in-possession who has willfully disobeyed the Court's order, and ignored the intent behind the judgment. Federal Courts have commonly found contempt in situations where property held *in custodia legis,* was interferred with when an implied or direct order of the Court prohibited such interference. *See e.g. Clay v. Waters,* 178 F. 385, 394 (8th Cir., 1910); *Lineker v. Dillon,* 275 F. 460, 470 (N.D., Cal., 1921); *Cf. Lamp v. Cramer,* 285 U.S. 217, 52 S.Ct. 315, 76 L.Ed. 715 (1932). In the circumstances of this case, however, where the allegations of "bad faith" on the part of the debtors-in-possession in the administration of the assets of the estate are sustained by the evidence, and supported by very credible and overwhelming evidence at that, a remedy for the contempt can be fashioned effectively only under Section 1112(b) of Title 11 of the United States Code. The "interference" in this case was reprehensible.

Section 1112(b) allows, *inter alia,* that:

"(b) Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;

(5) denial of confirmation of every proposed plan and denial of additional time for filing another plan or a modification of a plan;

(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan; and

(9) termination of a plan by reason of the occurrence of a condition specified in the plan."

11 U.S.C. § 1112(b) (1983).

Ordinarily, Congress intended, and Chapter 11 of the Bankruptcy Code provides that the debtor in possession shall remain in possession and control of their assets and business, without the intervention of a trustee, *unless* a party in interest brings to the attention of the Bankruptcy Court an abnormality in the administration of the case. *In re Sea Queen Kontaratos Lines, Ltd.,* 7 B.C.D. 601, 10 B.R. 609 (Bkrtcy.D.Me.1981); *In re La Sherene, Inc.,* 3 B.R. 169 (Bkrtcy.N.D.Ga., 1980); 3 Norton, *Bankruptcy Law and Practice* § 53.01 (1981). Some evidence of mismanagement could, ordinarily, be demonstrated in the average Chapter 11 case which would not rise to the level of "cause" contemplated in Section 1112(b) of said Title 11. 5 *Collier on Bankruptcy,* ¶ 1104.01(7)[c] (15th ed., 1983); See H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 220 (1977) reprinted in *U.S. Code. Cong., & Admin.News* (1978 at page 5787, 6179. However, Bankruptcy Courts have appointed trustees in this type of case where the debtor-in-possession was found to be "insensitive to, or ignorant of, ethical and good faith dealings in business transactions." *In re Anniston Food Rite, Inc.; In re Higgins,* 20 B.R. 511, 515, 9 B.C.D. 378, CCH ¶ 68,865 (Bkrtcy.N.D.Ala.1982).

There are numerous cases in the law of bankruptcy that "the preservation of business enterprise must not be at the expense of creditors" (*In re Dutch Woodcraft Shops,* 14 F.Supp. 467, 469 (W.D. Mich.,1935)) and when the lack of good faith in a reorganization case appears, this Court *must* act to dismiss the petition, even though the plan stage of the case has not yet been reached. *In re Metropolitan Realty Corp.,* 433 F.2d 676, 679 (5th Cir., 1970),

*cert. den.* 401 U.S. 1008, 91 S.Ct. 1251, 28 L.Ed.2d 544. Because the defendants in this case had a full opportunity to rebut the allegations of bad faith, not only in the context of this motion, but during the trial which resulted in the September 13, 1982, judgment, the entry of an order either dismissing or converting this case under Section 1112(b) of said Title 11 should not be further delayed for additional hearings. *Matter of Bleaufontaine, Inc.*, 634 F.2d 1383, 1388 (5th Cir.1981).

■■■ An indispensible ingredient in every pending reorganization is that of good faith. *Matter of Levinsky*, 23 B.R. 210 (Bkrtcy.E.D.N.Y.1982). Good faith has been used as a synonym for "honesty of purpose" (*In re Metropolitan Realty Corp., supra* at 678), and has always been attendant in cases administered under the Bankruptcy Act of 1898. Section 1112 is itself based upon those guidelines set forth in the Bankruptcy Rules for Chapters X, XI, and XII of the Bankruptcy Act (Analysis of Bankruptcy Reform Act of 1978, *Annual Survey of Bankruptcy Law*—1979 (Callaghan) p. 352; Rules 10–308, 11–42 and 12–41(b) of the Rules of Bankruptcy Procedure) and therefore dismissal of a case for lack of "good faith" on the part of the debtor, as distinguished in the jurisdictional sense, is not precluded by the new Bankruptcy Code. *Matter of Northwest Recreational Activities, Inc.*, 4 B.R. 36, 39 (Bkrtcy. N.D.Ga.1980).

Since "cause" under Section 1112(b) of said Title 11 incorporates the concept of "lack of good faith" (*Weathersfield Farms, Inc. v. First Inter-State Bank*, 15 B.R. 282, 283 (D.C., Vt., 1981), and the Federal Courts traditionally have not hesitated in dismissing a reorganization proceeding where it appeared that the Court's jurisdiction was being abused or, as in the case at bar, the debtor was unduly taking advantage of the liberal provisions of the Bankruptcy laws to the detriment of all the creditors (*In re Landmark Capital Co.*, 27 B.R. 273 (Bkrtcy. D.Ariz.1983)), it is incumbent upon this Court to dispose of this case accordingly.

■ The Court ordered Mr. Guglielmo to divest himself of management, in whatever guise, of the Apartment complex and to relinguish the relevant books and records pertaining to the management of the partnership interest to the partner/plaintiffs herein. It should be brought to the attention of the parties that an order of the Bankruptcy Judge to a debtor-in-possession to produce books and records for whatever purpose under his control and possession, in whatever capacity, bearing on his transactions may be made at any time and is sufficient in itself to compel the production of the documents without the necessity of the issuance of a formal subpoena duces tecum. *Morehead v. Greenville Supply Co.*, 439 F.2d 962 (6th Cir., 1971); Rule 734 of the Rules of Bankruptcy Procedure. In this instance, Mr. Guglielmo was even served with a duly issued subpoena duces tecum and still refrained from producing the documents as ordered.

Counsel for the debtors cite *Matter of Multiponics, Inc.*, 622 F.2d 709 (5th Cir., 1980) for the proposition that the existence of Lager, Inc. as a separate juridical entity (*see Abraham v. Lake Forest, Inc.*, 377 So.2d 465 (4th Cir., La.App., 1979, *writ denied* 380 So.2d 99, 100)) should not be ignored by this Court simply because Mr. Guglielmo possesses a 100% stock ownership interest of the corporation.

Mr. Guglielmo, at his deposition, could not state who all of the officers of the corporation are, who the members of the board of directors of Lager, Inc. are, and when the last meeting of the board of directors was held. It is simply incredible that an individual of Mr. Guglielmo's business acumen who owns 100% of the stock ownership of a corporation could not know those simple facts germane to the existence of the corporation. What counsel for the debtor ignored in the *Matter of Multiponics, Inc.* decision was the quote from Fifth Circuit Court of Appeals Judge John R. Brown, speaking for the Court, wherein the Court noted that

"... [the] presence or absence of the earmarks of an arm's length bargain may

be significant (*Pepper v. Litton,* 308 U.S. at 306–07, 60 S.Ct. at 245, 84 L.Ed. at 289) [as respects directors' dealings with debtor] and the conduct of a small rather than large number of directors may be subject to even greater scrutiny for indicia of fair dealing and candor (citations omitted)."

*Supra* at 714. The Court has exercised this greater scrutiny.

Counsel also ignored the quote from the majority opinion wherein the Court notes that

"the modern tendency is to respect the corporate entity *unless* the notion of legal entity is used to justify wrong, protect fraud, or defend crime, or unless there is a violation of the rules of fair play and good conscience by the claimant."

*Supra* at 725.

The Court has determined that Mr. Guglielmo, in executing the "management agreement" on behalf of both Ridgefield and Lager, Inc., primarily for *his own* benefit, has violated the rules of fair play and good conscience. His selfishness in his acts was a deviation from a concern he should have had for his creditors.

■ An officer, director, or shareholder of a corporation will not be shielded by the corporate form from liability for a breach of a fiduciary duty in which he himself is involved. *In re Firestone,* 26 B.R. 706, 714 (Bkrtcy.S.D.Fla.1982); *LCL Theatres, Inc. v. Columbia Pictures Industries, Inc.,* 619 F.2d 455 (5th Cir., 1980). Mr. Guglielmo had a paramount duty to conserve and maximize the value of the assets of the estate and to advance the interests of the estate entrusted to him. *In re Traffic Safety Co., Inc.,* 21 B.R. 669 (Bkrtcy., E.D. Pa., 1982). As such, he owned a fiduciary duty to all of his creditors, whether secured or unsecured. *Ford Motor Credit Co. v. Weaver,* 680 F.2d 451, 462 (6th Cir., 1982). The debtor-in-possession can not evade with impunity a lawful order of this Court under the circumstances of this case relying on the corporate veil provided by his 100% owned Lager Inc. *Lager, Inc. is the alter ego of Mr. Guglielmo,* as evidenced by the monthly reports filed in the case record, and the testimony of Mr. Guglielmo himself. The debtors' attempt in bad faith to utilize Lager, Inc. to the detriment of the creditors in this bankruptcy case, and to the plaintiffs in this adversary proceeding, leaves the Court no choice but to dismiss this case, with prejudice, under the provisions of Section 1112(b) of Title 11 of the United States Code.

An appropriate order, with notice, will be entered accordingly. The motion is granted insofar as the relief granted to the plaintiffs is the dismissal of the entire bankruptcy case, Case Number 81–00363 on the docket of this Court, thereby lifting the automatic stay. Additionally, the plaintiffs are awarded reasonable attorney's fees in the amount of $1,500.00, and all costs are assessed against the defendants herein, and in favor of the plaintiffs.